The court took time to consider the case, and on the 13th of January, 1810,
Wilds, J.,
delivered the opinion of the court, consisting of Waties, Bay, Brevard, Wilds, and Smith, Justices; Grimke, J., absent, sick, as follows. (N. B. I omit the statement of the case, and grounds, set forth in the brief for a new trial; and also the arguments of counsel, as the following opinion contains every thing that is necessary to be known, to a perfect understand-of the cáse.) Wilds, J. The negroes, in question, were claimed by the plaintiff under two deeds of gift made by, Agnes Cooper to her grand daughters, Sarah and Elizabeth Cooper, respectively. *356 In these deeds, the donor gives to each of her said grand-daughters three negroes, with their increase to them, and the heirs of their bodies. And in case of no such issue, at their death, then with cross remainders over to the survivor, and the issue of her body, as gfojgggid . anc¡ on fa¡|ure 0f suc|j ¡ssue, then to the surviving grand child oí the donor. It must be recollected that Sarah and Eliza* beth, the donees, were the grand.daughters of the donor, Agnes, by her son, George Cooper. They both died without issue ; and the plaintiff, Jane Cooper, is a grand daughter of the donor, by another son, Samuel Cooper, who claims the negroes in question, under the same deeds of gift, as coming under the description of “ only surviving grand-child of the donor.” The defendant claims as father and heir at law of the donees, Sarah and Elizabeth, and contends, that by the operation of law on the deed, as also by the manifest intention of the donor, deducible as well from the deed itself, as elsewhere, he is entitled to retain them. The most prominent feature which this case presents, and one, the decision of which may materially affect all the other points submitted by the brief, is, what is the proper construction to be put upon the deeds 1 What estate do they create in the property in question, and in whom do they vest it.
It will be remembered that these are not deeds of marriage settlement, or other deeds of trust, and therefore not entitled to the equitable construction of an executory devise, but staud upon the plain acknowledged principles of the common law. Those principles seem clearly to have established, that there can be no limitation of a personal chattel after an estate for life in the same, but the whole will vest absolutely in the first taker, unless by deed of trust, when the legal estate vests in the trustees, and the uses appointed, direct the manner of executing the trust, or by executory devise, where, from the great tenderness indulged for a man in ex. tremis, frequently unadvised, and always illy qualified to make a final arrangement of his affairs, the courts, by a liberal construction, do for him what they suppose he would have done for himself, in another situation, and effectuate his intentions, where they conform to legal principles. Co. Litt. 20, b. Harg. ed. 2 Fearne 122, 2d ed. and generally. 5 Bac. Abr. 720. Gwillims ed. Shep. Touch, pref. 2 Woodd. 231), 240. It is said, when there is an express limitation in a deed, of a chattel, by words which, if applied to a freehold estate, would create an express estate tail, the whole interest vests absolutely in the first taker. 2 Fearne 243. Powell’s Notes, cites 1 T. R. 593. Chattels real, are esteemed of a more permanent character, and receive a different construction, for as¡ *357 to them it is established, that limitations, over, after an estate for life in the same, are good. Fearne Ex. Dev. 45. 8 Co. 95. 10 Co. 46.
For the origin, either of the original rules or this modification of it, we are to seek, in the early abhorrence entertained for perpetuities of all kinds, and to the entire disregard, both of the value and character of a personal chattel. For the reason of tbe rule, or of its modification, we might in vain seek anywhere. Both, however, are admitted everywhere as clear law, without any authority, without any dictum to the contrary,.unless we regard as such the wishes of an enlightened man, that the law were otherwise. Let the present case, then, be tested by this principle. The deeds, in the first instance, give the negroes described in them to Sarah and Elizabeth, respectively, and to the issue of their bodies, respectively, with cross remainders to each other ; and it is only after the death of both donees, and an entire failure of issue by both, that the ulterior limitation to the plaintiff is to have effect, even could she be considered as the person designated by the terms, surviving grand children. -Was there not, then, a life estate first carved out of these negroes ? Even in that event, the^limitation over in a deed like this would be void. Are not the words of this deed, if applied to a freehold estate, sufficient to have created an estate tail 1 Unquestionably they are. But even if this were the casé of a will, or trust deed, it would be a matter of considerable question, whether from a fair exposition of the deed, by a comparison of all its parts, the terms, “surviving grandchildren,” did not mean the surviving grandchild of the two particularly named, Sarah and Elizabeth ; and if this were decided otherwise, it would yet remain to be determined, whether the ulterior limitation over, would not be too remote to be protected, even by the liberal construction extended to deeds of trust and executory devises. . By an executory devise, which extends as well to personal as real property, a chattel personal cannot be limited, or so disposed of, as to take effect after failure of heirs of the body, or dying without issue, without other words of restriction; the limitation over would be too remote. 2 Ves. 171. But when the limitation over is on a dying without issue, courts will lay hold of every circumstance they can find, to confine the construction to a dying without leaving issue at the time of the death, in order to give effect to such limitation. 1 P.- Wms. 198, 432, 667. 2 Fearne, 185-6. 2 Atk. 313. 1 Bur. 272, 190, 191. <2 T. R. 720. It is probable, however, were this an executory devise, or deeds of *358 *rus^ fitted to the same construction, enough might be found on the face of them to enable a court to qualify the general expressions, arid thereby give effect to the limitations over. But this is not a deed of that description, and there can be no profit in contemplating what might be its probable effect if it were, it is, however, said, that the rule which prohibits the limitation over, of chattels personal, after an estate for life, in the same, unless by executory devise, or by the intervention of trustees, is a rule of ancient pedantry, and technical strictness ; that there is no reason, nor justice in the rule, which makes a distinction in the construction of a will and deed, and that the English judges themselves, if now left to declare the rule, would make a different decision. I think it probable they would, for I confess my mind furnishes me with no means of discovering the wisdom of the rule; but as it is a settled rule of the common law, I shall not lose sight of the hope held out by one of the great masters of that science, “ that at some other time, in some other place, on some other occasion, the wisdom of the rule may appear.” I will even go farther ; 1 think it abundantly probable, that the same judges, enriched with the stores of modern science, would, had they now the power, new fashion many of the massy pillars, with the rude proportions of which they are so little pleased, which upholds the gothic structure of the common law. But they have not the power; and if they had, the propriety of its exercise would be very doubtful. It will not be forgotten, that all the rules for the transmission of property are of positive institution, less valuable for their wisdom than for the certainty which they give to possessions. That any rule is better than no rule, and that it calls for all the wisdom of the supreme legislation of a State, to break in on settled habits, and change well settled rules, by which much property has been recovered, and much more held. Have not the judges of this country the same difficulties to encounter ? Is not the common law of England also the common law of this country ? And although we are no longer bound to look to English decisions for an exclusive exposition of the rules of the common law, yet are not those rules, when correctly expounded, authoritative, as well in this country as in England? And although the reasonableness of the rule in question be not very apparent, is not the rub itself an ancient one ? Is there not an ample and infallible corrective at hand, whose province it is to remedy evils of this kind ? It will be remembered that it required the strong arm of English legislation to break the unreasonable and oppressive fetters of ancient feudal tenures, and until a like interference of our own *359 legislature, the elder son was his father’s sole heir. And may we not, from these considerations, as well as others, deduce an useful bint, that whenever either the absurdities, or> injustice, of any par. ticuiar rule of law, which it is our sole duty-dicere et non facere, become manifest, the power which our constitution has provided, both to make and unmake the laws, will provide the proper remedy. I am not a little supported in my adherence to fixed principles, in observing the implicit respect paid to them, by the most enlightened jurists of our sister States. I feel it of vast importance, not only that our decisions should be correct, but that there should be an uniformity in the decisions of the different States, when practicable. I am the more confirmed in the construction which I give to this deed, because, although it be decided by a strict rule of law, arising out of the deed itself, yet in this particular case, it most manifestly effectuates the intention of the donor, as collected from all her acts and declarations subsequently. The plaintiff in this case was a granddaughter by another son, for whom provision, as ample as in the present case, had been also made. The grandmother never con. teniplated the death of both the donees in the deeds in question, the daughters of her son George, without issue, or in her subsequent limitations., she would have designated the ulterior remainder man. She never intended to take the property given to the children of her son George, and give it to those of her son Samuel, thereby nurturing the feuds she seemed to lament so much ; for she says, with apparent distress, that after these donations, she should still leave enough for her sons to quarrel about. These circumstances have no influence in the construction given to the deeds themselves, but relieve the mind from all apprehension, that a rule of law, said to be unreasonable, has operated harshly in this case. I cannot forbear, also, to acknowledge the support of the opinion of Lord Kenyon, in the case of Doe v. Morgan, 3 T. R. 765, where he says, “No arguments teud so much to seduce our understandings as those which are addressed to our passions, and, therefore, they ought to be discouraged in courts of law. I verily believe that it would have been better for the public, if the same rules of construction which hold in the case of deeds, had always been applied to wills ; for we find that very few questions arise on the limitatioa of estates in deeds, compared to those which arise on wills. Certain technical expressions were formerly adopted for the creation of particular estates, and those being 'well understood, it seldom happens that others less definite are substituted.”
From this view of the case, it will be seen that it is unnecessary *360 to decide the other questions raised in the brief. As I am of opinion the limitations under which the plaintiff claims, are void by the principles of the common law, the negroes in question vested absolutely in the donees, Sarah and Elizabeth, and the defendant, as their father, has a right to retain them against the claim of the plaintiff, I think the opinion given to the jury in this case not supportable upon principle.
The whole court concurred.